**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

**KISHORE NAIK, HARISH CHAND,**
**MOHAMED K. NEWAZ, ABDUL BATEN**
**ROCKY, B. GOURISHANKAR,**
**MOHAMAD M. ABBASI, individually and**
**on behalf of all others similarly situated,**

               **Plaintiffs,**

               **v.**

**SWAGAT RESTAURANT, INC. d/b/a**
**SAPPHIRE INDIAN CUISINE, SATIS**
**CHANDRA AURORA, in his official and**
**individual capacity, SANDIP DASHI, in his**
**official and individual capacity, and Does 1–**
**50,**

               **Defendants.**

--------------------------------------------------------x

**NO. 19-CV-5025 (JMF)**

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Robert Ottinger
Finn Dusenbery
Benjamin Weisenberg
THE OTTINGER FIRM, P.C.
401 Park Ave S
New York, NY 10016
(347) 492-1904

*Attorneys for Plaintiffs, Opt-In Plaintiffs, and the proposed class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... i

I.   INTRODUCTION ....................................................................................................... 1

II.  BACKGROUND ......................................................................................................... 2

   A.   Procedural History ................................................................................................ 2

   B.   Plaintiffs' Claims ................................................................................................. 3

   C.   Discovery And Settlement Discussions ................................................................ 4

III. SUMMARY OF THE SETTLEMENT TERMS ...................................................... 5

   A.   Settlement Fund .................................................................................................... 5

   B.   The Release ........................................................................................................... 6

   C.   Attorneys' Fees And Costs And Service Awards ................................................. 6

IV. ARGUMENT .............................................................................................................. 7

   A.   The Class Should Be Conditionally Certified For Settlement Purposes............ 8

     i.   The prerequisites of Rule 23(a) are satisfied .................................................. 9

       a.   Numerosity is satisfied ............................................................................ 9

       b.   Commonality is satisfied........................................................................ 10

       c.   Typicality is satisfied ............................................................................. 10

       d.   Adequate representation is satisfied....................................................... 11

     ii.  The Court should certify the settlement class under Rule 23(b)(3) ............. 12

       a.   Common questions predominate.............................................................. 12

       b.   A class action is a superior mechanism ................................................. 13

     iii. The Court should appoint Plaintiffs' counsel as class counsel ................... 13

   B.   Preliminary Approval Of The Agreement Is Appropriate ................................. 14

i.  There are no grounds to doubt the fairness of the agreement, which is the product of extensive, arm's length negotiations .............................................................. 16

ii.  The settlement contains no obvious deficiencies ........................................................ 17

iii. The settlement falls within the range of possible approval .......................................... 18

iv. The Agreement is Fair and Reasonable Under the FLSA ........................................... 20

C.  The Proposed Plan Of Class Notice Should Be Approved ................................................ 21

V.  CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

Cases

*Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997) ................................................................ 8

*Amchem Prods.*, 521 U.S. at 623 ................................................................................................ 12

*Barouille v. Goldman Sachs & Co.*, 10-CV-4285, (S.D.N.Y) ..................................................... 14

*Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 473-74 (S.D.N.Y. 2013); *Campos*, 2011 U.S. Dist.
    LEXIS 22959, at *8 ................................................................................................................ 13

*Butt v. Megabus Northeast, LLC*, 11-CV-3993, (S.D.N.Y) ........................................................ 14

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35
    (E.D.N.Y. May 17, 1990) ........................................................................................................ 19

*Campos v. Goode*, No. 10 Civ. 0224, 2011 U.S. Dist. LEXIS 22959, at *6-7 (S.D.N.Y. Mar. 4,
    2011)                                                  10

*Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595, 2012 U.S. Dist. LEXIS 144651, at *26 (S.D.N.Y.
    Oct. 5, 2012) .......................................................................................................................... 17

*Clark v. Ecolab, Inc.*, No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736, at *14-15 (S.D.N.Y.
    Nov. 17, 2009) .......................................................................................................................... 2

*Clark*, 2010 U.S. Dist. LEXIS 47036 at *17-18 ......................................................................... 17

*Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y. 2009).............................. 14

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ............................... 9

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)........ 13

*Cunningham v. Electronic Data Systems Corp.*, 754 F. Supp. 2d 638 (S.D.N.Y. 2010) .............. 9

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ...................................................... 16

*Danieli v. IBM*, No. 08 Civ. 3688, 2009 U.S. Dist. LEXIS 106938, at *12 (S.D.N.Y. Nov. 16,
    2009) ...................................................................................................................................... 15

*Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001).......................................... 10

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644, at *22-23
    (S.D.N.Y. Aug. 23, 2010) ....................................................................................................... 18

*deMunecas*, 2010 U.S. Dist. LEXIS 87644 at *14 ..................................................................... 18

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) .............................................. 11

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) ..................................................... 16

*Dorn v. Eddington Sec.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931, at *3 (S.D.N.Y. Jan.
    20, 2011). ................................................................................................................................. 8

*Dorn v. Eddington Security*, 08-CV-10271, (S.D.N.Y)............................................................... 14

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246-47 (E.D.N.Y. 2010)................... 20

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May
    29, 2007) .................................................................................................................................. 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) ..................................................... 21

*Fouathia v. Gurwitch Products*, 10-CV-6411, (S.D.N.Y)........................................................... 14

i

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005) ........................................ 10

*Frank*, 228 F.R.D. at 184 ............................................................................................................... 16

*Frank*, 228 F.R.D. at 186 ............................................................................................................... 19

*Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982).................................................. 10

*Gomez v. Gravitas Technology, Inc.*, 10-CV-6412, (S.D.N.Y) ................................................... 14

*Gortat v. Capala Bros.*, No. 07 CV 3629, 2010 U.S. Dist. LEXIS 35451, at *13 (E.D.N.Y. Apr.
     9, 2010) ................................................................................................................................... 11

*Grinnell Corp.*, 495 F.2d at 455 n.2.............................................................................................. 19

*Guevoura Fund Ltd. v. Sillerman*, Nos. 15 CV 07192, 18 CV 09784, 2019 U.S. Dist. LEXIS
     218116, at *18 (S.D.N.Y. Dec. 18, 2019)............................................................................... 17

*In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95, 2006 U.S. Dist.
     LEXIS 81440, at *14 (S.D.N.Y. Nov. 8, 2006)...................................................................... 15

*In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992) ................................. 10

*In re Initial Pub. Offering*, 226 F.R.D 186, 191 (S.D.N.Y. 2005)................................................8

*In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *Campos*, 2011 U.S. Dist. LEXIS
     22959 at *13............................................................................................................................ 19

*In re Med. X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936, at *19
     (E.D.N.Y. Dec. 10, 1997) ....................................................................................................... 16

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) ....................... 23

*In re Traffic Executive Ass'n*, 627 F.2d 631, 634.............................................................................2

*In re Traffic Executive Ass'n*, 627 F.2d at 634; *Newberg* § 11.25................................................ 15

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir 2001) ................. 9

*In re Visa Check/MasterMoney*, 280 F.3d at 136 ........................................................................ 12

*Joel A. v. Guiliani*, 218 F.3d 132, 144 (2d Cir. 2000) ................................................................ 20

*Johnson v. Brennan*, 2011 WL 4357376 (S.D.N.Y. 2011)........................................................... 18

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan.
     20, 2010) ................................................................................................................................... 7

*Khait*, 2010 U.S. Dist. LEXIS 4067 at *13................................................................................... 16

*Khait*, 2010 U.S. Dist. LEXIS 4067 at *22-23 ............................................................................ 18

*Khait*, 2010 U.S. Dist. LEXIS 4067 at *26.................................................................................. 17

*Khait*, 2010 U.S. Dist. LEXIS 4067, at *18................................................................................. 19

*Khait*, 2010 U.S. Dist. LEXIS 4067, at *18-19 ........................................................................... 20

*Landin v. UBS*, 10-CV-711, (S.D.N.Y) ....................................................................................... 14

*Lebron v. Apple-Metro, Inc.*, 12-CV-1411 (S.D.N.Y)................................................................. 14

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ........................................................... 10

*Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) ........................................ 11

*Martinez v. Forest Laboratories*, 10-CV-06032, (S.D.N.Y) ...................................................... 14

*Mas v. Cumulus Media Partners*, 10-CV-1396 (N.D. Cal) ........................................................ 14

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998)....................... 9

*McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005)........................................... 12

*McKenzie v. Schulte Roth & Zabel, LLP*, 11CV-3991, (S.D.N.Y) ................................................ 14

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ........................................ 14

*Miles v. Merrill Lynch & Co.*, 471 F.3d 24 (2d Cir. 2006) ........................................................... 9

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) .......................... 19

*Orgill v. Ingersoll-Rand Company*, 101142/2010, (S.D.N.Y) ..................................................... 14

*Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 U.S. Dist. LEXIS 68747, at *10-11 (S.D.N.Y. May 19, 2016) ................................................................................................. 10

*Riedel*, 2016 U.S. Dist. LEXIS 6874, at *14 ............................................................................... 12

*Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) .......................................................... 11

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) .......................................... 12

*Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972) ................................................................. 16

*Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. 2012) ......................................... 7

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 75362, at *11 (S.D.N.Y. June 1, 2010) ....................................................................................................... 2

*Torres*, 2010 U.S. Dist. LEXIS 75362 at *10-11 ......................................................................... 15

*Torres*, 2010 U.S. Dist. LEXIS 75362, at *9-10 .......................................................................... 15

*Toure v. Central Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) .................................................................................................... 11

*Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *40-41 (S.D.N.Y. Nov. 30, 2010) .............................................................................................. 19

*Wal-Mart Stores,* 396 F.3d at 113 .............................................................................................. 22

*Wal-Mart Stores*, 396 F.3d at 116 .............................................................................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) .......................... 14

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2010 U.S. Dist. LEXIS 139137 at *5-6 (E.D.N.Y. Nov. 12, 2010) ..................................................................................................................... 9

*Willix*, 2010 U.S. Dist. LEXIS 139137, at *9 ............................................................................... 23

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ............................................ 21

*Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) ...................................................... 16

*Wright*, 553 F. Supp. 2d at 343-44 ............................................................................................ 16

## Other Authorities

*Newberg on Class Actions* ("*Newberg*"), § 11.25 (4th ed. 2002) ................................................ 15

*Newberg* § 11:53 ........................................................................................................................ 22

## Statutes, Rules and Regulations

28 U.S.C. § 206 ............................................................................................................................ 2

29 C.F.R. § 778.109 ................................................................................................................. 3, 21

29 U.S.C. § 216(b) ....................................................................................................................... 1

Fed. R. Civ. P. 23(a)(4) .............................................................................................................. 11

Fed. R. Civ. P. 23(b)(3).................................................................... 1, 9, 12
Fed. R. Civ. P. 23(e) ............................................................................... 7
Fed. R. Civ. P. 23(e)(B) ........................................................................ 22
Fed. R. Civ. P. 23(g)(1)(A), (B) ........................................................... 13
Fed. R. Civ. P. 23(g)(1)(C) .................................................................. 13
Fed. R. Civ. P. 23(h) .............................................................................. 6
N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.5................................. 3
N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-3.5(b)......................... 3, 21
N.Y. Comp. Codes R. & Regs. tit. 12, §146-1.6.................................... 3
N.Y. Lab. L. § 195 ................................................................................. 3
N.Y. Lab. L. § 195(1) ............................................................................ 4
N.Y. Lab. L. § 195(3) ............................................................................ 4
N.Y. Lab. L. § 652 ................................................................................. 2
N.Y. Lab. L. §§ 195, 198 ..................................................................... 20

Plaintiffs, on behalf of themselves and all others similarly situated, respectfully submit this memorandum of law in support of their motion for preliminary approval of the Settlement Agreement and Release ("Settlement Agreement" or "Agreement").[1] Defendants   Swagat Restaurant, Inc. d/b/a Sapphire Indian Cuisine ("Sapphire"), Satish Arora, improperly pled as Satis Chandra Aurora, and Sandip Dashi (collectively hereinafter "Defendants") have agreed to the terms of the Settlement Agreement and do not object to the relief requested herein.

## I.   INTRODUCTION

Subject to Court approval, the parties have settled this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") case on a class-wide basis for $1,800,000.  The proposed settlement resolves the claims asserted in this action and satisfies all of the criteria for preliminary settlement approval under federal law.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) and 29 U.S.C. § 216(b); (3) appoint The Ottinger Firm, P.C. ("Ottinger Firm") as class counsel; (4) approve the Notice of Proposed Class Action Lawsuit Settlement and Fairness Hearing (the "Notice") and Claim Form attached as Exhibit A and B to the Agreement, respectively (collectively, the "Notice Packet"); (5) set a deadline of 60 days from the mailing of the Notice Packet to submit a Claim Form, object to the settlement or opt out of the Class; and (6) schedule a hearing ("Fairness Hearing") at which the Court will consider Plaintiffs' motion for final approval of the settlement, attorneys' fees and costs, and enhancement awards, not more than thirty (30) days after the deadline for Class Members to timely submit completed Claim Forms, opt-out, or file objections.

---

[1] In support of this motion, Plaintiffs submit the November 30, 2020 declaration of Finn Dusenbery ("Dusenbery Decl."), with exhibits attached thereto ("Dusenbery Ex. __")

1

Preliminary approval and conditional class certification will allow the parties to notify the Class Members of the settlement and of their right to object or opt out.  Preliminary approval does not require the Court to rule on the ultimate fairness of the settlement, but to make only an "initial evaluation" of the fairness of the proposed settlement and whether there is "probable cause" to submit it to the class members.  *See In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (the court need only find "'probable cause' to submit the [settlement] to class members and hold a fullscale hearing as to its fairness"); *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736, at *14-15 (S.D.N.Y. Nov. 17, 2009) (same). The Court should permit notice of the settlement to be sent to class members because the settlement falls within the "range of possible approval." *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 75362, at *11 (S.D.N.Y. June 1, 2010).

## II.    BACKGROUND

### A.    Procedural History

Named Plaintiffs were non-exempt employees – such as servers and a food runner – at Defendants' restaurant, Sapphire Indian Cuisine, formerly located in the Columbus Circle area in Manhattan at 1845 Broadway, New York, NY 10023. (Dusenbery Decl. ¶ 4.)  Named Plaintiffs worked at Sapphire Indian Cuisine for varying periods of time and the restaurant closed around July 2019.  (Dusenbery Decl. ¶ 5.)  On May 30, 2019, Named Plaintiffs filed a complaint against Defendants on behalf of themselves and a putative class of similarly situated non-exempt employees (collectively, "Plaintiffs"), alleging that Defendants (1) did not pay non-exempt employees the New York minimum wage for all hours worked, in violation of the FLSA, 28 U.S.C. § 206, and N.Y. Lab. L. § 652; (2) did not pay non-exempt employees the correct overtime rate for overtime hours worked, in violation of the FLSA and New York law; (3) did

not provide non-exempt employees with the wage statements and wage notices required under N.Y. Lab. L. § 195; and (4) did not pay non-exempt employees the full spread of hours premium when their workdays lasted longer than ten (10) hours, in violation of N.Y. Comp. Codes R. & Regs. tit. 12, §146-1.6.  (Dusenbery Decl. ¶ 6.)

### B.     Plaintiffs' Claims

Plaintiffs' minimum wage and overtime claims are based on Plaintiffs working long hours, such as fifty-six and half (56.5) hours per week, for example, and Defendants paying them a flat amount of money every week, in varying amounts such as approximately $175 per week, or $900 per week.  (Dusenbery Decl. ¶ 7.)  Plaintiffs contend that this violates the FLSA's minimum wage and overtime provisions as well as the New York Hospitality Wage Order, which required Defendants to pay Plaintiffs and its non-exempt employee's hourly rates rather than weekly salaries.  N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.5.  Under the FLSA, for hours worked in excess of forty (40) per week, Defendants were required to pay Plaintiffs an extra half of the regular rate, which is calculated by dividing Plaintiffs' weekly compensation by total hours worked.  *See* 29 C.F.R. § 778.109.  Further, under the NYLL, for hours worked in excess of forty (40) per week, Defendants were required to pay Plaintiffs a full one and a half times the regular rate, which is calculated by dividing Plaintiffs' weekly compensation by the lesser of total hours worked or forty (40) hours per week.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-3.5(b).

Further, Plaintiffs allege that Defendants failed to pay a spread of hours premium, in violation of N.Y. Comp. Codes R. & Regs. tit. 12, §146-1.6; failed to provide proper wage statements to Plaintiffs stating the correct overtime rate, and spread of hours premium owed to

Plaintiffs, in violation of N.Y. Lab. L. § 195(3); and failed to provide proper wage notices to Plaintiffs, in violation of N.Y. Lab. L. § 195(1).

### C.    Discovery And Settlement Discussions

Earlier in this litigation, around December 2, 2019, the parties agreed to a settlement conference and informally exchanged discovery to aid in settlement negotiations, including Defendants' payroll records for the named plaintiffs and other class members showing flat weekly salaries and some incomplete hand-written records of start times produced by Plaintiffs for certain weeks.  (Dusenbery Decl. ¶ 8.)   Defendants did not have any time records. (Dusenbery Decl. ¶ 8.)   The settlement conference was unsuccessful, and Magistrate Judge Lehrburger ordered the parties to meet and confer in regard to estimated damages, as Defendants had not provided Plaintiffs with an estimate of damages.  Subsequently, the parties met and conferred respecting damages and then, on May 5, 2020, held another settlement conference at which the Defendants argued that they had an inability to pay a potential settlement.  This second settlement conference was also unsuccessful.  (Dusenbery Decl. ¶ 9.)

Following the second settlement conference, the parties engaged in formal discovery, Plaintiffs and Defendants responded to document requests and interrogatories and Plaintiffs wrote a pre-motion letter seeking compel certain documents and information from Defendants on September 8, 2020.  In responding to discovery, Defendants produced payroll records showing flat weekly salaries and Plaintiffs produced some incomplete hand-written records of start times. Defendants did not produce any time records.  (Dusenbery Decl. ¶ 10.)

Subsequently, the parties reached a settlement in principle for $1,800,000.  (Dusenbery Decl. ¶ 11.)   Taking into account the substantial risks Plaintiffs face in this litigation, this settlement is highly favorable to the Class.

4

III.    **SUMMARY OF SETTLEMENT TERMS**

A.    **Settlement Fund**

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of One Million Eight Hundred Thousand Dollars ($1,800,000.00) (the "Gross Settlement Amount"). (Dusenbery Decl., Ex. 1, "Agreement," Section VI, ¶ 23.) The Gross Settlement Amount includes payments to Participating Class Members, attorneys' fees and costs, service awards to the Named Plaintiffs, and settlement administration costs. (Agreement Section VI, ¶ 24.)

The Net Settlement Fund is the remainder of the Settlement Payment after deductions for Court-approved attorneys' fees and costs, Court-approved service awards, settlement administration costs, and any other costs, expenses, fees, or other distributions (other than payments to Class Members) associated with the settlement. (Agreement Section VI, ¶ 25.) Plaintiffs' counsel will seek recovery of their litigation costs and attorneys' fees of no more than one-third of the Gross Settlement Amount. (Agreement Section VI, ¶ 24(a).)

The Net Settlement Fund shall be distributed among Participating Class Members – Class Members who timely submit Claim Forms – who worked at Sapphire between May 30, 2013, which is the earliest date Class Members worked within the statute of limitations, and the date of filing this motion for preliminary approval, though Defendants' restaurant closed around July 2019. (Agreement Section VI, ¶ 26.) The Net Settlement Fund will be allocated among Participating Class Members on a *pro rata* basis according to each Participating Class Member's workweeks between from May 30, 2013 to the date of filing this motion. (Agreement Section VI, ¶ 27.) Settlement payments will be made to all Class Members who submit a Claim Form during the 60-day period following the first mailing of the Class Notice. (Agreement Section IV,

¶ 13.)  Further, regardless of the number of Claim Forms submitted, Defendants shall pay at least 70% of the Net Settlement Fund to Participating Class Members, and, 120 days after the initial payments to Participating Class Members are mailed, any remaining amount of the Net Settlement Fund shall be re-distributed to Participating Settlement Class Members *pro rata* based on workweeks up to 70% of the Net Settlement Fund.   (Agreement Section VI, ¶ 29.) Participating Class Members shall have 120 days to cash these re-distribution settlement payments.  (Agreement Section VI, ¶ 29.)  Any uncashed or unclaimed amounts in the Net Settlement Fund shall revert to Defendants.  (Agreement Section VI, ¶ 29.)

### B.    The Release

In return for the above consideration, all Participating Class Members, namely, the Named Plaintiffs, opt-ins and those who timely submit Claim Forms, will release all wage and hour claims under federal and state law against Defendants.  (Agreement Section VIII, ¶ 36.)  All Class Members who do not submit claim forms will release all NYLL claims, but not FLSA claims, against Defendants.  (Agreement Section VIII, ¶ 35.)  Finally, all named plaintiffs will release all claims of any kind against Defendants.  (Agreement Section VI, ¶ 37.)

### C.    Attorneys' Fees And Costs And Service Awards

Class Counsel will apply for up to one-third of the Gross Settlement Amount as attorneys' fees and will seek reimbursement for costs.  (Agreement Section VI, ¶ 24(c).)  The Court need not rule on fees and costs now.  Plaintiffs will file a formal motion for approval of fees along with their motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h).

In addition to their individualized awards, the Named Plaintiffs, all of whom actively participated in this lawsuit and assisted Class Counsel, will apply for service award payments of $15,000 each in recognition of the services they rendered on behalf of the Class.  (Agreement

Section VI, ¶ 24(d)-(i).)  Counsel for the Plaintiffs will make this motion simultaneously with their motion for final approval of the Settlement Agreement.  Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation."  *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan. 20, 2010); *see also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. 2012) (awarding service awards of $10,000 and $15,000 where plaintiffs provided counsel with documents in their possession, assisted counsel in preparing for mediation, and risked being blacklisted as "problem" employees).  Here, service awards of $15,000 each for the named plaintiffs are warranted because the named plaintiffs responded to document requests and provided documents, responded to interrogatories, gave detailed factual information about their claims to help plaintiffs' counsel reach the result here, and also risked being blacklisted by other restaurants and having difficulty finding employment. *See* Dusenbery Decl., ¶ 12.)  Further, in exchange for the service awards, the Plaintiffs and Opt-In Plaintiffs will release all claims against Defendants.  (Agreement Section VIII, ¶ 37.)

Both the application for attorneys' fees and the application for service awards are separate from approval of the Settlement Agreement and will be fully briefed prior to final approval.  Thus, the Court need not decide those issues now.

## IV.    ARGUMENT

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Judicial proceedings under Fed. R. Civ. P. 23 ("Rule 23") have established a defined procedure and specific criteria for settlement approval in class action settlements. There are four necessary steps: (1) certifying the class for settlement purposes; (2) preliminary approval of the proposed settlement; (3) dissemination of notice of settlement to all class members; and

(4) a final settlement approval hearing.  *See In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005).  These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests.  *Torres*, 2010 U.S. Dist. LEXIS 75362 at *9-10.

With this motion, Plaintiffs request that the Court take the first three steps in the settlement approval process by (1) certifying the class for settlement purposes only, and (2) granting preliminary approval of the Settlement Agreement, and (3) approving, and authorizing distribution of, the Notice.

### A.       The Class Should Be Conditionally Certified For Settlement Purposes

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes.  *See e.g., Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997) (explaining that courts should examine whether the proposed class would be adequately represented and fairly treated by a class action settlement). Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing.  *Dorn v. Eddington Sec.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931, at *3 (S.D.N.Y. Jan. 20, 2011).

The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23(b).[2]

---

[2] The "similarly situated" standard for certifying an FLSA collective action class is "far more lenient" than the standard for class certification under Rule 23 of the Federal Rules of Civil Procedure.  *Cunningham v. Electronic*

Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001), *abrogated on other grounds by Miles v. Merrill Lynch & Co.*, 471 F.3d 24 (2d Cir. 2006). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."   Fed. R. Civ. P. 23(b)(3).   The Court has great discretion in determining whether to certify a class.   *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998).   *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2010 U.S. Dist. LEXIS 139137 at *5-6 (E.D.N.Y. Nov. 12, 2010).   However, in exercising this discretion, courts should give "proper deference to the private consensual decision of the parties."   *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10 (citation omitted).

### i.        The prerequisites of Rule 23(a) are satisfied

The Settlement Class is defined as all persons who are or have been employed by Defendants as non-exempt employees in New York between May 30, 2013 through the date of the filing of this motion.   (Agreement Section I, ¶ 1.)   This Class meets the requirements of numerosity, commonality, typicality, and adequacy of representation under Rule 23(a) for settlement purposes.

### a.        Numerosity is satisfied

The parties estimate that the Class includes approximately 51 class members. (Dusenbery Decl. ¶ 13.)   Thus, the Class is so numerous that joinder of all Class Members is impracticable.   *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

---

*Data Systems Corp.*, 754 F. Supp. 2d 638 (S.D.N.Y. 2010).  This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action class.

### b.     Commonality is satisfied

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982). *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The commonality requirement will be met if the named Plaintiffs share a common question of law or fact with the grievances of the prospective class.").

Here, there are several questions of law and fact alleged to be common to the Class, including the primary issues in this case, *i.e.,* whether Defendants paid Class Members the proper minimum wage, overtime, and spread of hours compensation, and whether Defendants provided wage notices and wage statements that complied with the NYLL. *See, e.g., Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 U.S. Dist. LEXIS 68747, at *10-11 (S.D.N.Y. May 19, 2016).

### c.     Typicality is satisfied

Typicality is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). *See*, *e.g., Campos v. Goode*, No. 10 Civ. 0224, 2011 U.S. Dist. LEXIS 22959, at *6-7 (S.D.N.Y. Mar. 4, 2011) (finding typicality met because "[t]he named plaintiffs suffered the same alleged injury as did the class members — Defendant's failure to pay overtime and their misappropriation of tips" and "because Plaintiffs' claims arise

from the same factual and legal circumstances that form the bases of the Class Members' claims"). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Gortat v. Capala Bros.*, No. 07 CV 3629, 2010 U.S. Dist. LEXIS 35451, at *13 (E.D.N.Y. Apr. 9, 2010).

Here, typicality is satisfied because "each class member's claim arises from the same course of events[,]" namely Defendants' alleged compensation policies for non-exempt employees in New York. *Riedel*, 2016 U.S. Dist. LEXIS 68747, at *12.

### d.    Adequate representation is satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Central Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

Here, Plaintiffs Naik, Chand, Newaz, Rocky, Gourishankar, and Abbasi, are adequate representatives of the proposed class, have fairly and adequately represented and protected the interests of all Class Members, and have no known conflicts with Class Members. (Dusenbery Decl. ¶ 19.) Accordingly, adequacy is satisfied.

11

ii.   **The Court should certify the settlement class under Rule 23(b)(3)**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.   Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).   The Class is suitable for certification, and the Court should certify the Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval of the Agreement for settlement purposes only.

a.   **Common questions predominate**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney*, 280 F.3d at 136.   The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139.   Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all Class Members are unified by common factual and legal allegations – that Defendants maintained a policy and practice of failing to provide proper wage notices and statements, paying non-exempt employees a flat weekly salary that did not meet the minimum wage or vary with hours worked, in violation of federal and New York law.   Therefore, predominance is satisfied. *Riedel*, 2016 U.S. Dist. LEXIS 6874, at *14.

**b.     A class action is a superior mechanism**

Rule 23(b)(3)'s second part analyzes whether "'the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy.'"  Fed. R. Civ. P. 23(b)(3); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will achieve economies of scale for putative Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications.  *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 473-74 (S.D.N.Y. 2013); *Campos*, 2011 U.S. Dist. LEXIS 22959, at *8.

**iii.     The Court should appoint Plaintiffs' counsel as class counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B).  In making this determination, the Court must consider counsel's (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(C).

13

Plaintiffs' counsel The Ottinger Firm, P.C. ("Ottinger Firm") meet all relevant criteria. They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling wage and hour class actions; are well-versed in wage and hour and class action law; and are well-qualified to represent the interests of the class. (Dusenbery Decl. ¶¶ 21.)   Courts have repeatedly found Ottinger Firm to be adequate class counsel in wage and hour class actions.  *See, e.g., Barouille v. Goldman Sachs & Co.*, 10-CV-4285, (S.D.N.Y); *Mas v. Cumulus Media Partners*, 10-CV-1396 (N.D. Cal); *Landin v. UBS*, 10-CV-711, (S.D.N.Y); *Martinez v. Forest Laboratories*, 10-CV-06032, (S.D.N.Y); *Orgill v. Ingersoll-Rand Company*, 101142/2010, (S.D.N.Y); *Butt v. Megabus Northeast, LLC*, 11-CV-3993, (S.D.N.Y); *Gomez v. Gravitas Technology, Inc.*, 10-CV-6412, (S.D.N.Y); *Fouathia v. Gurwitch Products*, 10-CV-6411, (S.D.N.Y); *McKenzie v. Schulte Roth & Zabel, LLP*, 11CV-3991, (S.D.N.Y); *Dorn v. Eddington Security*, 08-CV-10271, (S.D.N.Y), (co-counsel with Outten & Golden LLP); and *Lebron v. Apple-Metro, Inc.*, 12-CV-1411 (S.D.N.Y).  (*See also* Dusenbery Decl. ¶ 17.)

Therefore, the Court should appoint Ottinger Firm to serve as class counsel pursuant to Rule 23(g).

### B.    Preliminary Approval Of The Agreement Is Appropriate

There is a strong preference in the law for the resolution of class action litigation through settlement.  *See McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("'The compromise of complex litigation is encouraged by the courts and favored by public policy.'") (citations omitted).

Preliminary approval is the first step in the settlement process.  It allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input at a fairness hearing.   The fairness hearing affords class members "an opportunity to present their views of the proposed settlement."  *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95, 2006 U.S. Dist. LEXIS 81440, at *14 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted).  Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *Torres*, 2010 U.S. Dist. LEXIS 75362, at *9-10.

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10-11; Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), § 11.25 (4th ed. 2002).  The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d at 634; *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members). *See also Danieli v. IBM*, No. 08 Civ. 3688, 2009 U.S. Dist. LEXIS 106938, at *12 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank*, 228 F.R.D. at 184.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Khait*, 2010 U.S. Dist. LEXIS 4067 at *13 (same); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).  *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("When a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness.").  "Consequently, when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'"  *Wright*, 553 F. Supp. 2d at 343-44 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).  *See also Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972) ("[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits.") (internal citations omitted).

### i.   There are no grounds to doubt the fairness of the agreement, which is the product of extensive, arm's length negotiations

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive negotiations."  *In re Med. X-Ray Film Antitrust Litig.,* No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997).

The proposed settlement here is the product of extensive negotiations, which occurred while the parties were engaging in discovery and after Plaintiffs' had move to compel certain

documents and information from Defendants and the Court had granted the motion.  (Dusenbery Decl. ¶ 10-11.)   The negotiations were at all times hard-fought and at arm's length and have produced a result that experienced counsel believe to be in the best interests of the Class.  *See Guevoura Fund Ltd. v. Sillerman*, Nos. 15 CV 07192, 18 CV 09784, 2019 U.S. Dist. LEXIS 218116, at *18 (S.D.N.Y. Dec. 18, 2019) ("The active involvement of experienced and independent mediators in the negotiation of the Settlement is strong evidence of the absence of any collusion and further supports the presumption of fairness."); *Clark*, 2010 U.S. Dist. LEXIS 47036 at *17-18 (where the settlement was achieved through experienced counsels' arm's-length negotiations, then, "[a]bsent fraud or collusion," "'[c]ourt[s] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (citation omitted).

### ii.    The settlement contains no obvious deficiencies

The proposed settlement has no obvious deficiencies. The settlement provides for reasonable service awards for the Named Plaintiffs, all of whom were instrumental in facilitating a resolution of this matter, in the amount of $15,000 each. These individuals expended significant time providing documents and critical facts to counsel. (Dusenbery Decl. ¶ 12.) "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595, 2012 U.S. Dist. LEXIS 144651, at *26 (S.D.N.Y. Oct. 5, 2012) (awarding 10 service awards totaling $110,000 out of $5,250,000 settlement fund); *Khait*, 2010 U.S. Dist. LEXIS 4067 at *26 (approving awards totaling $175,000 out of a $9,250,000 settlement fund).

Finally, the settlement does not mandate excessive compensation for Class Counsel, which will apply for an award of attorneys' fees not to exceed one-third of the gross settlement

amount and reimbursement of expenses.  This is well "within the range of reasonable attorney fees awarded in the Second Circuit."  *Johnson v. Brennan,* 2011 WL 4357376 (S.D.N.Y. 2011) ("The request for 33% of the Fund plus expenses is reasonable and well within the range approved by courts in similar cases."); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644, at *22-23 (S.D.N.Y. Aug. 23, 2010) ("Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit.") (citing cases).

> In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.

*Khait,* 2010 U.S. Dist. LEXIS 4067 at *22-23 (internal citations omitted).

### iii.   The settlement falls within the range of possible approval

As explained above, the Settlement Agreement was reached only after protracted arms' length negotiations, which occurred during hard-fought discovery.  The parties and their counsel fully considered the advantages and disadvantages of continued litigation.  Class Counsel believe that this settlement achieves all of the objectives of the litigation, namely a substantial monetary settlement to Class Members.

Class Counsel, who have a great deal of experience in the prosecution and resolution of wage and hour class actions, have carefully evaluated the merits of this case and the proposed settlement.  Even if the matter were to proceed to trial, Class Counsel acknowledge that the apparent strength of the claims in this case is no guarantee against a complete or partial defense verdict.  "Litigation inherently involves risks."  *deMunecas*, 2010 U.S. Dist. LEXIS 87644 at *14

(citation omitted).  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *Campos*, 2011 U.S. Dist. LEXIS 22959 at *13 (same).  For instance, since Defendants did not produce time records and Plaintiffs' records showing start times for certain weeks are incomplete, a jury may not credit Plaintiffs' testimony as to the number of hours they worked, which would reduce any potential recovery.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount in the Agreement is more than reasonable.  *See Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *40-41 (S.D.N.Y. Nov. 30, 2010) ("[C]ourts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery.'"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.") (collecting cases); *cf. Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Khait*, 2010 U.S. Dist. LEXIS 4067, at *18 (quoting *Frank*, 228 F.R.D. at 186).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any

19

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Khait*, 2010 U.S. Dist. LEXIS 4067, at *18-19. "[A] 'settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair.'" *Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 246-47 (E.D.N.Y. 2010) (quoting *Joel A. v. Guiliani*, 218 F.3d 132, 144 (2d Cir. 2000)).  Here, the settlement is well within the range of recovery, as Plaintiffs estimate that the class-wide damages for minimum wage, overtime and spread of hours violations under the NYLL are approximately $3,047,005.64, and statutory damages for notice and wage statement violations under the NYLL are a maximum of approximately $510,000, assuming the maximum penalties of $10,000 for each class member, but will necessarily be lower given that some class members are not be entitled to full penalties and were employed prior to the cap on damages increasing for both violations from $2,500 to $5,000 on February 27, 2015.  (Dusenbery Decl., ¶ 23.); *see* N.Y. Lab. L. §§ 195, 198.  Furthermore, even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement.  Finally, Sapphire has closed as of July 2019, there is an ongoing pandemic, and only one Defendant apparently has any money to pay the settlement, Mr. Dashi or "Desai." (Dusenbery Decl., ¶ 24.)  Thus, if this settlement is not approved, it is unlikely that a larger class-wide settlement could be reached in the future.

For the foregoing reasons, the Court should grant preliminary approval of the Settlement Agreement and direct that notice of it be given to the Class.

### iv.     The Agreement is Fair and Reasonable Under the FLSA

In determining whether a settlement is fair and reasonable under the FLSA, courts consider the totality of the circumstances, including "the following factors: 1) the plaintiff's range of possible recovery; 2) the extent to which 'the settlement will enable the parties to avoid

anticipated burdens and expenses in establishing their respective claims and defenses'; 3) the seriousness of the litigation risks faced by the parties; 4) whether 'the settlement agreement is the produce of arm's-length bargaining between experienced counsel'; and 5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012). Here, respecting the first factor, the settlement is well within the range of possible recovery for substantially the same reasons as mentioned in Section IV(B)(iii), and any potential FLSA recovery is necessarily lower than NYLL, as the minimum wage and regular rate is lower under federal law because the regular rate is often calculated by dividing total compensation per week by total hours per week rather than forty (40) hours per week. *Compare* 29 C.F.R. § 778.109 *with* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-3.5(b). Respecting the second factor, settlement will allow the parties to avoid further discovery, including depositions of the parties, motion practice, and a trial. (Dusenbery Decl., ¶ 25) Respecting the third factor, Plaintiffs face serious risk in establishing the hours that they worked because they will have to testify as to those hours, as the parties do not have complete time records. (Dusenbery Decl., ¶ 26.) Lastly, respecting the fourth and fifth factors, the settlement is the product of arm's-length bargaining between experienced counsel and there is no possibility of fraud or collusion, as the settlement occurred between counsel experienced in class/collective wage and hour litigation while the parties were engaged in discovery.

### C.   The Proposed Plan Of Class Notice Should Be Approved

 "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.23(c)(2)(B). *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and

thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(B) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted).  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114 (internal citations omitted).  Notice is "adequate if it may be understood by the average class member." *Newberg* § 11:53.

Here, the Claims Administrator will disseminate the Class Notice Form and Claim Form (Exhibit A and B to the Agreement) to all Class Members via first class mail at their last known addresses.  For any Notice returned as undeliverable, the Claims Administrator will (1) take all reasonable steps to obtain a correct address, (2) attempt a skip trace using the computer databases available and the information provided by Defendants, and (3) attempt one re-mailing. (Agreement Section III, ¶ 9.)  Thus, the proposed methods of notice comport with Rule 23 and the requirements of due process.

Rule 23(c)(2)(B) requires a class notice to state the nature of the case, the class definition, the class claims, that a class member may enter an appearance through counsel, how a class member may opt out, and the binding effect of a class judgment.  The Notice comports with the rule in all respects.  It describes the terms of the settlement, including the proposed allocation of

attorneys' fees and service awards to the named Plaintiffs and Opt-In Plaintiffs, provides specific information regarding the date, time, and place of the final approval hearing, clearly provides that Class Members may enter an appearance through their own counsel, discloses Class Members' right to exclude themselves from the settlement or object to any of its terms, and specifies the deadline and procedure for doing so, and warns of the binding effects of the settlement on those persons who do not opt out of the Settlement Class.  *See Willix,* 2010 U.S. Dist. LEXIS 139137, at *9 (approving notice where it "adequately puts Rule 23 Class Members on notice of the proposed settlement"); *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). (*See also* Agreement Ex. A.)

Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of notice.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant their motion in full.

Dated:  New York, New York
       November 30, 2020          Respectfully submitted,

                        /s/ Finn Dusenbery
                        Finn Dusenbery
                        Robert Ottinger
                        THE OTTINGER FIRM, P.C.
                        401 Park Ave S
                        New York, NY 10016
                        (347) 492-1904

                        *Attorneys for Plaintiffs, Opt-In Plaintiffs, and the proposed class*

23