**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**KISHORE NAIK, HARISH CHAND,**
**MOHAMED K. NEWAZ, ABDUL BATEN**
**ROCKY, B. GOURISHANKAR,**
**MOHAMAD M. ABBASI, individually and**
**on behalf of all others similarly situated,**

         **Plaintiffs,**

         **v.**

**SWAGAT RESTAURANT, INC. d/b/a**
**SAPPHIRE INDIAN CUISINE, SANDIP**
**DASHI, in his official and individual**
**capacity, and Does 1-50,**

         **Defendants.**

-------------------------------------------------------x

**NO. 19-CV-5025 (JMF)**


**MEMORANDUM OF LAW IN SUPPORT OF CLASS**
**REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT**


THE OTTINGER FIRM, P.C.
Robert Ottinger
Finn Dusenbery
79 Madison Ave
New York, NY 10016

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... i

I.  INTRODUCTION .......................................................................................................... 1

II. BACKGROUND ............................................................................................................ 1

   A.  The Lawsuit ............................................................................................................. 1

   B.  Discovery and Settlement Discussions .................................................................... 2

   C.  Settlement Terms ..................................................................................................... 3

   D.  Release of Claims .................................................................................................... 5

III. ARGUMENT ................................................................................................................. 5

   A.  The Proposed Settlement Should Be Approved........................................................ 5

      i.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved 6

         a.   Procedural fairness................................................................................... 6

         b.   Substantive fairness ................................................................................ 6

            1.   Complexity, expense, and likely duration of the litigation .................... 7

            2.   Reaction of the class to the settlement .................................................. 8

            3.   Stage of the proceedings and the amount of discovery completed ......... 9

            4.   Risks of establishing liability................................................................ 9

            5.   Risks of establishing damages ............................................................ 10

            6.   Risks of maintaining the class action through trial .............................. 10

            7.   Ability of defendants to withstand a greater judgment ........................ 11

            8.   Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation........................................................ 11

ii.     The Notice to Class Members Meets the Requirements of Rule 23 ..................... 13

B.    Approval Of The Settlement Of The Opt-In Plaintiffs' FLSA Claims Is Also Appropriate 13

C.    Service Awards Should Be Granted To Plaintiffs ............................................................ 14

D.    The Claims Administrator's Fees Should Be Approved.................................................... 16

E.    Class Counsel's Attorneys' Fees And Costs Should Be Approved................................. 16

i.     Class Counsel's Requested Fee Award is Reasonable ......................................... 18

a.    *Goldberger* factors ..................................................................... 19

1.    Counsel's time and labor ...................................................................... 19

2.    The litigation's magnitude and complexity and the risks of litigation ................ 22

3.    Quality of the representation................................................................... 22

4.    The fee is reasonable in relation to the settlement................................. 23

5.    Public policy considerations .................................................................. 24

IV.    CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Asare v. Change Grp. N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *52
    (S.D.N.Y. Nov. 15, 2013)……………………………………………..........20

*Bannerman v. Air-Sea Packing Group*, No. 18 CV 6146,
    2020 U.S. Dist. LEXIS 12868 (S.D.N.Y. Jan. 24, 2020) ....................................17,18,23

*Banyai v. Mazur*, No. 00 Civ. 9806,
    2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar, 30, 2007)....................................20

*Barouille v. Goldman Sachs & Co.*, 10-CV-4285, (S.D.N.Y);………………….……….22

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ..........................................21

*Bekker v. Neuberger Berman Group 401k Plan Inv. Comm.*, No. 16 CV 6123,
    2020 U.S. Dist. LEXIS 224680 (S.D.N.Y. Dec. 1, 2020) ....................................20

*Braunstein v. Hudson Hall, LLC,* 19-cv-7983, Dkt. No. 35, p. 20, Dkt. No. 39
    (S.D.N.Y. 2021)……………………………..…………………………………….…21

*Butt v. Megabus Northeast, LLC*, 11-CV-3993, (S.D.N.Y)………………………………22

*Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595,
    2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012)....................................6,12,13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)........................................6, 7

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...................18,24

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494,
    2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 11, 2015) ....................................23

*Dorn v. Eddington Security*, 08-CV-10271, (S.D.N.Y)…………………………………..23

*D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787,
    2008 U.S. Dist. LEXIS 96034 (E.D.N.Y. Nov. 25, 2008) ....................................10,11

*Flores v. Anjost Corp.*, No. 11 Civ. 4712,
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Jan. 29, 2014) ....................................16

*Fouathia v. Gurwitch Products*, 10-CV-6411, (S.D.N.Y)……………………………........22

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ....................................7,9,15,21,25

*Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452,
    2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008)....................................23

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386,
    1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991) .......................................10

*Goldberger Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...........................................19,25

*Gomez v. Gravitas Technology, Inc.*, 10-CV-6412, (S.D.N.Y).…………………………..22

*Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029,
    2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011)....................................24

*Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043,
    2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015) .................................23

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071,
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005)....................................6,24

*In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389,
    2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015)....................................18

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)...............22,23

*In re Lloyd's Am. Trust Fund Litig.*, NO. 96 Civ. 1262,
    2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)....................................18

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).........................10

*In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884,
    2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007) ....................................23

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173,
    2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ......................................8,9

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................5,9,16

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ............................................................13

*Johnson v. Brennan*, No. 10 Civ. 4712,
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) .................................16

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381,
    2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010)......................................16,18,24

*Landin v. UBS*, 10-CV-711, (S.D.N.Y).……………………………………………....22

*Lebron v. Apple-Metro, Inc.*, 12-CV-1411, (S.D.N.Y).…………………………….....23

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)…7,10,12,18,19,23,24

*Martinez v. Forest Laboratories*, 10-CV-06032, (S.D.N.Y)……………………………22

*McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 418 (2d. Cir. 2010)…………………21

*McKenzie v. Schulte Roth & Zabel, LLP*, 11-CV-3991, (S.D.N.Y)……………………..22

*Orgill v. Ingersoll-Rand Company*, 101142/2010, (S.D.N.Y)…………………………..22

*Pantelyat v. Bank of Am., N.A.*, No. 16 CV 8964,
    2019 U.S. Dist. LEXIS 15714 (S.D.N.Y. Jan. 31, 2019) ………………………….20

*Perez v. Jupada Enters.*, 2012 WL 6641490 at *1 (S.D.N.Y. 2012)………………….17,18

*Pinguil v. We Are All Frank, Inc.*, No. 17-CV-2237 (BCM), 2018 U.S. Dist.
    LEXIS 88339, 2018 WL 2538218, at *5 n.4 (S.D.N.Y. May 21, 2018)…………21

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 CV 520,
    2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012)………………………….21

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) …………………………….17

*Riveras v. Bilboa Rest. Corp.*, No. 17 CV 4430,
    2018 U.S. Dist. LEXIS 211166 (S.D.N.Y. Dec. 14, 2018) ……………………….21

*Salinas v. Starjem Restaurant Corp.*, 123 F. Supp.3d 442 (S.D.N.Y. 2015)…………..…14

*Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. 2012)…………………..15

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) …………………..15

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) …………………………………17

*Sukhnandan v. Royal Health Care of Long Island*,
    No. 12 CV 4216, 2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) …….24

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993)…………………..17

*Taft v. Ackermans*, No. 02 Civ. 7951,
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ……………………………20,22,24

*Teachers Ret. Sys. v. A.C.L.N. Ltd.*, No. 01 Civ. 11814,
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) …………………………….13

*Thornhill v. CVS Pharmacy, Inc.*, No. 13-cv-5507, 2014 WL 1100135 at *2-3
    (S.D.N.Y. March 20, 2014)………………………………………………………18

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698,
    2007 U.S. Dist. LEXIS 43223 (S.D.N.Y. June 22, 2007) ………………………….9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)..............................6,9,10,17

*Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817,
        2009 U.S. Dist. LEXIS 94544 (S.D.N.Y. Oct. 8, 2009)...........................................24

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693,
        2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013)....................................20,25

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531,
        2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sept. 23, 2014) .................................20,22

**Statutes, Rules, and Regulations**

29 C.F.R. § 778.109……………………………………………………………………..2,14

29 U.S.C. § 202.......................................................................................................................24

29 U.S.C. § 216(b) ................................................................................................................13

Fed. R. Civ. P. 23 ...............................................................................................................5,13

FLSA, 28 U.S.C. § 206……………………………………………………………………..1

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3..............................................................14

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6................................................................2

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2..............................................................14

N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.5………………………………….....2

N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-3.5(b)…………………………………2,14

N.Y. Lab. L. § 195(1)…………………………………………………………………2,9

N.Y. Lab. L. § 195(3);………………………………………………………………....2

N.Y. Lab. L. § 195(4)……………………………………………………..………………2

N.Y. Lab. L. § 650 ...............................................................................................................24

N.Y. Lab. L. § 652 ...............................................................................................................1

## I.      INTRODUCTION

Class Representatives Kishore Naik, Harish Chand, Mohamed K. Newaz,  Abdul Baten Rocky, B. Gourishankar and Mohamad M. Abbasi, submit this memorandum of law in support of their motion for final approval of the Joint Stipulation of Settlement and Release dated April February 18, 2021 ("Settlement Agreement" or "Agreement"). [1]  Defendants Swagat Restaurant, Inc. d/b/a Sapphire Indian Cuisine ("Sapphire") and Sandip Desai (pled as "Sandip Dashi") (together with Sapphire, "Defendants") have agreed to the terms of the Settlement Agreement and do not object to the relief requested herein.   Plaintiffs submit that this settlement for $1,800,000, which was reached in principle in the middle of the pandemic last year with a defunct restaurant that had closed around July 2019, is an excellent result and warrants approval.

## II.      BACKGROUND

### A.      The Lawsuit

Plaintiffs and the Class Members worked as non-exempt employees – such as servers, food runners, bussers, kitchen helpers, *inter alia* – at Defendants' restaurant, Sapphire Indian Cuisine, formerly located in the Columbus Circle area in Manhattan at 1845 Broadway, New York, NY 10023, which closed around July 2019.  (Dusenbery Decl. ¶¶ 4-5.)  On May 30, 2019, the Named Plaintiffs filed a complaint against Defendants on behalf of themselves and a putative class of similarly situated service employees (collectively, "Plaintiffs"), alleging that Defendants (1) did not pay non-exempt employees the minimum wage for all hours worked, in violation of the FLSA, 28 U.S.C. § 206 and N.Y. Lab. L. § 652; (2) did not pay non-exempt employees the correct overtime rate for overtime hours worked, in violation of the FLSA and New York law; (3) did not provide non-exempt employees with the wage statements and wage notices required

---

[1] In support of this motion, Plaintiffs submit the June 2, 2021 declaration of Finn Dusenbery ("Dusenbery Decl.") and exhibits thereto ("Dusenbery Decl. [NUMBER]").  Plaintiffs also submit the June 3, 2021 declaration of Jennifer Keough for JND Legal Administration ("Keough Decl.").

under N.Y. Lab. L. § 195; (4) did not pay service non-exempt employees the full spread of hours premium when their workdays lasted longer than ten (10) hours, in violation of N.Y. Comp. Codes R. & Regs. tit. 12, §146-1.6.  (*Id.* at ¶ 6.)

As previously stated in Plaintiffs' preliminary approval papers, Plaintiffs' minimum wage and overtime claims are based on Plaintiffs working long hours, such as fifty-six and a half (56.5) hours per week, and Defendants paying them a flat amount of money every week, in varying amounts such as $175 or $900 per week.  (Dusenbery Decl. ¶ 7)  Plaintiffs contend that Defendants violated the minimum wage and overtime provisions of the FLSA as well as the New York Hospitality Wage Order.  Specifically, the New York Hospitality Wage Order required Defendants to pay Plaintiffs and non-exempt employees hourly rates rather than weekly salaries. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.5.  Thus, under the NYLL, for hours worked in excess of forty (40) per week, Defendants were required to pay Plaintiffs a full one and a half times the regular rate, which is calculated by dividing Plaintiffs' weekly compensation by the lesser of total hours worked or forty (40) hours per week. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-3.5(b).  Further, under the FLSA, for hours worked in excess of forty (40) per week, Defendants were required to pay Plaintiffs an extra half of the regular rate, which is calculated by dividing Plaintiffs' weekly compensation by total hours worked. *See* 29 C.F.R. § 778.109. Finally, Plaintiffs allege that Defendants failed to pay a spread of hours premium, in violation of N.Y. Comp. Codes R. & Regs. tit. 12, §146-1.6; failed to provide proper wage statements to Plaintiffs stating the correct overtime rate, and spread of hours premium owed to Plaintiffs, in violation of N.Y. Lab. L. § 195(3); and failed to provide proper wage notices to Plaintiffs, in violation of N.Y. Lab. L. § 195(1).  (*Id.* at ¶ 6.)

   **B.   Discovery and Settlement Discussions**

As stated previously in Plaintiffs' preliminary approval papers, the parties informally exchanged discovery earlier in this litigation to aid in settlement negotiations, including Defendants' payroll records for the named plaintiffs and class members showing flat weekly salaries and some incomplete hand-written records of start times produced by Plaintiffs for certain weeks. (Dusenbery Decl. ¶ 8.) Defendants did not have any time records. (Dusenbery Decl. ¶ 8.) On December 2, 2019, the parties participated in a settlement conference with Magistrate Judge Lehrburger, which was unsuccessful, and Magistrate Judge Lehrburger ordered the parties to meet and confer in regard to estimated damages, as Defendants had not provided an estimate. (Dusenbery Decl. ¶ 9.) Subsequently, Defendants provided a damage estimate and the parties held another settlement conference before Magistrate Judge Lehrburger on May 5, 2020, at which Defendants argued they had an inability to pay a potential settlement. (Dusenbery Decl. ¶ 10.) Again, the case did not settle. (Dusenbery Decl. ¶ 10.)

Following the second failed settlement conference, the parties engaged in formal discovery, and Defendants and Plaintiffs responded to document requests and interrogatories. (Dusenbery Decl. ¶ 11.) Defendants produced payroll records showing flat weekly salaries, and Plaintiffs produced some incomplete hand-written records of start times. (Dusenbery Decl. ¶ 11.) Defendants did not produce any time records. (Dusenbery Decl. ¶ 11.) Plaintiffs filed a pre-motion letter seeking to compel certain documents and information from Defendants on September 8, 2020, and the Court granted the motion. (Dusenbery Decl. ¶ 11.) Subsequently, the parties reached a settlement in principle for $1,800,000. (Dusenbery Decl. ¶ 12.)

### C.   Settlement Terms

The Settlement Agreement provides that Sapphire shall pay a Gross Settlement Fund of One Million Eight Hundred Thousand Dollars ($1,800,000.00) (the "Settlement Payment").

(Agreement ¶ 18)  The Settlement Payment includes payments to Class Members, attorneys' fees and costs, service awards to the Class Representatives, and settlement administration costs.  (*Id.* at ¶ 19.)

The Net Settlement Fund is the remainder of the Settlement Payment after deductions for Court-approved attorneys' fees and costs, Court-approved service awards, settlement administration costs, and any other costs, expenses, fees, or other distributions (other than payments to Class Members) associated with the settlement.  (*Id.* at ¶ 19.)  Plaintiffs' counsel may seek recovery of their litigation costs and attorneys' fees of no more than one-third of the Settlement Payment after deducting for costs[2].  (*Id.* at ¶ 3.2.)

The Net Settlement Fund shall be distributed among Class Members who worked at Sapphire between May 30, 2013 and February 19, 2021.  (*Id.* at ¶ 1.)  The Net Settlement Fund will be allocated among Class Members on a *pro rata* basis according to each Class Member's workweeks between those dates.  (*Id.* at ¶ 22.)

Class Members will have 120 calendar days from when the Settlement Payment checks are issued to redeem their settlement payments, after which the checks will be void.  (*Id.* at ¶ 21.)  After this 120-day period to cash Settlement Checks, the uncashed Settlement Payment checks shall be returned to the Net Settlement Fund and the Settlement Administrator shall determine the total amount of the Net Settlement Fund that remains outstanding and unpaid (the "Remaining Net Settlement Fund Amount").  (*Id.* at ¶ 23.)  In the event that less than 70% of the Net Settlement Fund has been paid to Class Members because of uncashed Settlement Payment checks or any other reason, the Remaining Net Settlement Fund Amount shall be re-distributed

---

[2] The parties' settlement agreement mistakenly provided for attorneys' fees of Six Hundred Thousand Dollars ($600,000) (*i.e.*, one-third of the Gross Settlement Fund), plus reimbursement of litigation costs to Plaintiffs' Counsel.  (Agreement, ¶ 19(c).)  However, consistent with The Ottinger Firm, P.C.'s retainers in this case, Plaintiffs shall seek reimbursement of costs out of the Gross Settlement Fund and one-third of the remaining sum of money as attorneys' fees.

to Class Members who cashed Settlement Payment checks, pro rata, based on weeks worked, up to 70% of the Net Settlement Fund ("Re-distribution Payment").  (*Id.* at ¶ 24.)  If the amount of the Re-distribution Payment shall render any re-distribution impractical (*i.e.*, if the costs of the Re-distribution Payment shall equal or exceed the amount to be re-distributed), then the amount of the Re-distribution Payment shall be applied to the *cy pres* charitable designee, which the parties have agreed is the organization, "Make the Road New York."  (*Id.* at ¶ 24.)  Class Members shall have 120 days to cash their shares of the Re-distribution Payment. (*Id.* at ¶ 25.) After the later of (1) 120 days to cash the initial Settlement Payment checks; or (2) 120 days to cash the Re-distribution Payment checks, the remaining value of any and all uncashed or unclaimed Settlement Payment or Re-distribution checks shall revert to Defendants.  (*Id.* at ¶ 25.)

### D. Release of Claims

In return for the above consideration, all Class Members who have not opted out of the Class will release all wage and hour claims against Defendants under state law.  (*Id.* at ¶ 31.)  All FLSA Collective Members will release all FLSA claims.  (*Id.* at ¶ 32.)  The Named Plaintiffs have agreed to a general release of all claims.  (*Id.* at ¶ 33.)

## III. ARGUMENT

### A. The Proposed Settlement Should Be Approved

Fed. R. Civ. P. 23(e) ("Rule 23") requires judicial approval of any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570,

575 (S.D.N.Y. 2008) (internal quotation omitted).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet . . . it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

> ### i. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

### a. Procedural fairness

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotation omitted).  Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted).

The parties, represented by experienced counsel, engaged in arm's-length negotiations and agreed to a settlement in principle after Plaintiffs had filed a pre-motion letter seeking to move to compel certain documents and information.  (Dusenbery Decl. ¶ 11-12.)   The parties engaged in sufficient discovery for Plaintiffs to evaluate both the strength and value of the Class's claims.  Thus, the settlement is entitled to a presumption of fairness and adequacy. *E.g.*, *Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651, at *14 (S.D.N.Y. Oct. 5, 2012).

### b. Substantive fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. Rather than applying these factors in a formulaic manner, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id*. at 468.

### 1.    Complexity, expense, and likely duration of the litigation

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation.  *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (internal quotation omitted).  This case is no exception.  There are 51 Class Members (*see* Dusenbery Decl. ¶ 13), claims have been brought under federal and state statutes, and there are disputed factual and legal issues, including the number of hours that Plaintiffs and Class Members worked, whether they were paid flat or hourly rates, and whether Defendant Desai is liable as an individual employer under the FLSA and NYLL (Defendants' counsel has argued he was an absent owner).  Given that the parties do not have complete time records and Plaintiffs only have some records showing start times, Class Members may have to use a mix of documents and

testimony to establish the amount of hours that they worked, and it may be difficult to determine what documents or testimony will be representative of the class.

Further litigation without settlement would also necessarily result in additional expense and delay. Conducting full discovery and motion practice would be time consuming and expensive for both sides. Preparing and putting on evidence on the complex factual and legal issues at such a trial would also consume a great deal of time and resources for both sides, as well as require substantial judicial resources to adjudicate the parties' disputes. Any judgment would likely be appealed, thereby extending the duration of the litigation and depleting any possible recovery. This Settlement, on the other hand, makes monetary relief available to Rule 23 Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.      Reaction of the class to the settlement

Here, the positive reaction of the Class Members overwhelmingly supports approval of the settlement. In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that object to and opt out of the settlement. Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-Civ-5173, 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008).

Pursuant to the Court's February 24, 2021 Order, JND Legal Administration, the Claims Administrator, mailed the Class Notice to the 51 Class Members on March 26, 2021. (Keough Decl. ¶ 4.) The time has expired for all Class Members to opt out and/or object under the Agreement. No Class Members have opted out of or objected to the settlement. (*Id.* at ¶¶ 8-9.) Thus, Class Members' satisfaction with the settlement is clear.

       **3.**     **Stage of the proceedings and the amount of discovery completed**

Courts consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement. *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *18 (S.D.N.Y. June 22, 2007). Courts look at whether "the parties conducted sufficient discovery to understand their claims and negotiate settlement terms." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *20.

Class Counsel entered into the proposed Settlement Agreement after sufficient discovery to evaluate the strength and weaknesses of the claims, which included Defendants' payroll records and some purported NYLL 195(1) notices, and Plaintiffs' incomplete records showing start times. (Dusenbery Decl. ¶¶ 11.) This supports a finding that the Settlement Agreement reached in this matter is the result of fair and reasonable negotiation. *See Frank*, 228 F.R.D. at 185 (holding that when counsel understands the "strengths and weaknesses of their cases" through discovery, this knowledge supports final approval).

       **4.**     **Risks of establishing liability**

In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 579. Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

Here, the parties dispute the amount of hours that Class Members worked, Plaintiffs only have their own incomplete time records showing start times for certain weeks, not end times, and will have to establish their hours worked through testimony. Given that the parties lack complete time records, it is possible that a jury would not credit Plaintiffs' testimony and Plaintiffs could

fail to establish liability.  Moreover, in the absence of time records, Defendants will argue that they paid hourly rates rather than flat sums.

Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed Settlement alleviates this uncertainty, and is therefore preferable to trial, which may result in a smaller per-plaintiff recovery.

### 5.    Risks of establishing damages

Courts also consider the risks of establishing damages.  Regardless of Plaintiffs' ability to establish liability, they still face "risks in proving [their] damages at trial."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119.  Damages would be calculated in large part on Plaintiffs' testimony and "damages are a matter for the jury, whose determinations can never be predicted with certainty."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### 6.    Risks of maintaining the class action through trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified.  *D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991).  Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class.  *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18.  Here, no class

has yet been certified, and Defendants would almost certainly oppose certification.  Moreover,

Defendants will argue that employees were paid hourly rates rather than flat sums, which could

make class certification more difficult for Plaintiffs in showing uniform violations based on flat

sums.  Accordingly, this factor weighs in favor of approval.

7.      <b>Ability of defendants to withstand a greater judgment</b>

Courts consider a defendant's ability to withstand a judgment greater than the settlement.

*D.S.*, 2008 U.S. Dist. LEXIS 96084, at \*57.  While Plaintiffs are not fully aware of Defendants'

financial condition, Sapphire closed around July 2019 and, in any event, the restaurant industry

in New York City has been severely impacted by the COVID-19 pandemic in the last year.

(Dusenbery Decl. ¶ 17.)  Further, only one individual Defendant, Sandip Desai, has the ability to

pay the settlement, and the other individual who was previously a Defendant, Satish Chandra

Aurora, represented that he could not afford a settlement and was dismissed without prejudice.

(Dusenbery Decl. ¶ 17.)  Defendant Desai could not afford to fund the settlement at once, and

needed to spread out funding, making one payment of $1m after preliminary approval and the

second payment of $800,000 after final approval.  (Agreement ¶ 18.)  Defendant Desai raised

money to fund the settlement through a mortgage on property.  (Dusenbery Decl. ¶ 18.)  Given

these facts, it is unlikely that Defendants could withstand a greater judgment.  Accordingly, this

factor weighs extremely heavily in favor of approving the settlement.

8.      <b>Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation</b>

The final two *Grinnell* factors can be considered together.  "The most important factor in

the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the

merits, balanced against the [relief] offered in settlement.'"  *D.S.*, 2008 U.S. Dist. LEXIS 96034,

11

at \*53 (quoting *Grinnell*, 495 F.2d at 455).   The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365.   These factors weigh strongly in favor of approval of the Settlement.

> [T]here is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

*Capsolas*, 2012 U.S. Dist. LEXIS 144651, at \*18 (internal quotation marks omitted).   Here, as stated previously in Plaintiffs' preliminary approval papers, the settlement is well within the range of recovery, given that Plaintiffs estimate the class-wide compensatory damages for minimum wage, overtime and spread of hours violations under the NYLL, excluding liquidated damages, are approximately \$3,728,666.05,[3] statutory damages for notice and wage statement violations under the NYLL are a maximum of approximately \$510,000, assuming maximum penalties of \$10,000 for each class member (damages will necessarily be lower given that some class members are not entitled to full penalties and were employed prior to the cap on damages increasing for both violations from \$2,500 to \$5,000 on February 27, 2015).

Importantly, however, there is the possibility that Class Members would not be able to collect any damages if Defendant Desai is not found individually liable (Defendants' counsel had argued he was an absent owner) or if he resists collection efforts, as the restaurant itself closed around July 2019.   Thus, while there is a possibility that the Class may be awarded more money, including double liquidated damages, after trial (and appeal), in light of the risks of the case and Defendants' likely inability to withstand a greater judgment, the Settlement provides the

---

[3] On checking the estimates again for this motion, this number varied slightly from the prior estimate in Plaintiffs' preliminary approval papers of \$3,728,849.06.

significant benefit of a guaranteed and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road" or, worse, a larger judgment which the Class is unable to collect. *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).

The *Grinnell* factors all weigh in favor of issuing final approval of the Settlement Agreement. Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval.

### ii.   The Notice to Class Members Meets the Requirements of Rule 23

As set forth in the Court's February 24, 2021 Order, the Settlement Notice satisfies the requirements of Rule 23(c)(2)(B).

### B.   Approval Of The Settlement Of The Opt-In Plaintiffs' FLSA Claims Is Also Appropriate

The Class Representatives seek approval of the settlement of the FLSA wage and hour claims. FLSA claims are brought as a "collective action" in which employees must affirmatively opt in to the litigation. 29 U.S.C. § 216(b). Because employees who do not opt in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, and the high standard for approval of a class settlement does not apply to an FLSA settlement. *See Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *18-19.

In any event, as stated previously in Plaintiffs' preliminary approval papers, the Settlement is fair and reasonable considering the totality of the circumstances and meets all factors of the test in *Wolinsky v. Scholastic, Inc.*, including: "1) the plaintiff's range of possible recovery; 2) the extent to which 'the settlement will enable the parties to avoid anticipated

burdens and expenses in establishing their respective claims and defenses'; 3) the seriousness of the litigation risks faced by the parties; 4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and 5) the possibility of fraud or collusion."  With respect specifically to the first *Wolinsky* factor regarding the range of possible recovery, it is met for substantially the same reasons as discussed *supra*, and because any potential recovery under the FLSA is necessarily lower than the NYLL, as both the applicable minimum wage and regular rate is lower under federal law.[4]  As to the second factor, the Settlement allows the parties to avoid further discovery, including depositions, motion practice and trial.  (Dusenbery Decl. ¶ 16.)  As to the third factor, Plaintiffs face the serious risk of establishing hours worked through testimony, which a jury may not credit.  (Dusenbery Decl. ¶ 15)  Finally, as to the third and fourth factors, the Settlement is the result of arm's-length bargaining between experienced counsel and there is no fraud or collusion, as the parties' experienced attorneys agreed to the Settlement while engaged in discovery and after the Court granted Plaintiffs' motion to compel.

### C. Service Awards Should Be Granted To Plaintiffs

Under the proposed Settlement Agreement, and subject to the Court's approval, separate payments of $15,000 to each Named Plaintiff and Class Representative Kishore Naik, Harish Chand, Mohamed K. Newaz, Abdul Baten Rocky, B. Gourishankar and Mohammad Abbasi (these persons are referred to collectively as the "Service Award Plaintiffs").  The six service

---

[4] As stated in Plaintiffs' preliminary approval papers, Plaintiffs contend they would be entitled to the full minimum wage under New York law, which has at all relevant times has been higher than federal minimum wage, since Class Members were improperly paid flat rates and, as a result, did not receive proper notice of the tip credit.  *See Salinas v. Starjem Restaurant Corp.*, 123 F. Supp.3d 442 (S.D.N.Y. 2015) ("…an employer may not take a tip credit unless the employer has given the employee written notice stating: (1) the amount of tip credit to be taken from the *basic minimum hourly rate*…" (emphasis added); N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146-2.2(a), 1.3.  Further, the regular rate under the FLSA is calculated by dividing total compensation per week by total hours per week rather than forty (40) hours per week under NYLL. *Compare* 29 C.F.R. § 778.109 *with* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-3.5(b).

awards total $90,000.  A court may grant such awards in a class action.  In doing so, a court

considers:

> [t]he existence of special circumstances including the personal risk (if any)
> incurred by the plaintiff-applicant in becoming and continuing as a litigant, the
> time and effort expended by that plaintiff in assisting in the prosecution of the
> litigation or in bringing to bear added value (e.g., factual expertise), any other
> burdens sustained by that plaintiff in lending himself or herself to the prosecution
> of the claim, and of course, the ultimate recovery.

*Frank*, 228 F.R.D. at 187 (internal quotation omitted).  Service awards "are particularly

appropriate in the employment context. . . . [where] the plaintiff is often a former or current

employee of the defendant, and thus . . . he has, for the benefit of the class as a whole,

undertaken the risks of adverse actions by the employer or co-workers."  *Id.*

The Plaintiffs expended considerable time and effort to assist Class Counsel with the

case.  (Dusenbery Decl. ¶¶ 20-21.)  The Service Award Plaintiffs regularly communicated with

Class Counsel, responded to Defendants' document requests and interrogatories, provided Class

Counsel with documents, and explained relevant and necessary factual information to Class

Counsel, including information about the pay and hours worked that allowed Class Counsel to

estimate damages in this case.  (*Id.* at ¶¶ 20-21.)  In addition, Mr. Naik specifically spent time

coordinating with other Service Award Plaintiffs to help set up meetings with Class Counsel.

(*Id.* at ¶ 21.)  The Service Award Plaintiffs also risked being blacklisted, which could harm

future employment prospects.  *See Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y.

2012) (awarding service awards of $10,000 and $15,000 where plaintiffs provided counsel with

documents in their possession, assisted counsel in preparing for mediation, and risked being

blacklisted as "problem" employees); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435

(S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of

employer retaliation or whose future employability has been impaired may be worthy of

receiving an additional payment, less others be dissuaded."); *see also Khait v. Whirlpool Corp.*, 2010 WL 2025106 (E.D.N.Y. 2010). Further, in exchange for the service awards, the Plaintiffs and Opt-In Plaintiffs will release all claims against Defendants. (Agreement Section VIII, ¶ 37.)

The six service awards, totaling $90,000, are reasonable in comparison with those approved by other courts, and they represent approximately 5% of the Settlement Fund. *See*, *e.g.*, *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 U.S. Dist. LEXIS 11026; at *27 (S.D.N.Y. Jan. 29, 2014) (approving five service awards of $25,000 each from $1,050,000 settlement fund); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (awarding four service awards totaling $40,000, or 9.09% of $440,000 settlement fund) . Because of their time, assistance, and development of the case, all of which were subject to potential retaliation, the payments to the Service Award Plaintiffs are appropriate and justified as part of the overall Settlement.

### D.     The Claims Administrator's Fees Should Be Approved

Pursuant to the terms of the Settlement Agreement, the parties have retained JND Legal Administration to administer the settlement. The Claims Administrator estimates that settlement administration costs will not exceed $36,000. (Keough Decl. ¶ 10.) Thus, Plaintiffs respectfully request that the Court approve all of the Claims Administrator's reasonable fees to be paid from the settlement fund.

### E.     Class Counsel's Attorneys' Fees And Costs Should Be Approved

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the

three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.* Here, the Settlement Agreement authorizes Class Counsel to receive one-third of the Settlement Payment as attorneys' fees after deducting costs from the Gross Settlement Fund, consistent with Class Counsel's retainer.[5]

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), "[t]he trend in [the Second] Circuit is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks omitted); *see also Perez v. Jupada Enters.*, 2012 WL 6641490 at *1 (S.D.N.Y. 2012) (Furman, J.) ("The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one.") (internal quotations omitted); *Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3 (noting that the percentage of recovery method is "consistent with the trend in this Circuit") (internal quotation marks omitted); *Raniere*, 310 F.R.D. at 220 (noting that "[c]ourts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the 'lodestar method'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases). The percentage method is preferred because it rewards prompt and efficient resolution of class litigation, while strict application of the lodestar method encourages inefficiency and resistance to prompt settlement. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993).

---

[5] As stated *supra*, the parties' settlement agreement mistakenly provided for attorneys' fees of Six Hundred Thousand Dollars ($600,000) (*i.e.*, one-third of the Gross Settlement Fund), plus reimbursement of litigation costs to Plaintiffs' Counsel, (Agreement, ¶ 19(c).), but, consistent with The Ottinger Firm, P.C.'s retainers in this case, Plaintiffs shall seek reimbursement of costs out of the Gross Settlement Fund and then one-third of the remaining sum of money.

  **i. Class Counsel's Requested Fee Award is Reasonable**

  Class Counsel seeks $599,566.35 from the settlement fund as attorneys' fees and $1,300.93 as costs. (*See* Dusenbery Decl. ¶ 32, Ex. 4 for a breakdown of the costs for which Class Counsel seek reimbursement.)  This request for a fee of one-third of the settlement fund, after deducting costs, is consistent with both the retainer agreements Class Counsel entered into with the Named Plaintiffs (Dusenbery Decl. ¶ 37) and the norms of class litigation in this Circuit. *See*, *e.g.*, *Thornhill v. CVS Pharmacy, Inc.*, No. 13-cv-5507, 2014 WL 1100135 at *2-3 (S.D.N.Y. March 20, 2014) (Furman, J.) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33 percent" and citing cases); *Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3-4; *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ("A fee award of one-third of the Settlement Fund 'is well within the range accepted by courts in this circuit.'"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (awarding fees of one-third of $42,000,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding fees of 33% of $9,250,000 settlement); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *76 (S.D.N.Y. Nov. 26, 2002) ("In this district alone, there are scores of common fund cases where fees alone (*i.e.*, where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *see also Perez,* 2012 WL 6641490 at *2-5 awarding fees of 33% on a percentage of fund basis and citing *Lloyd's Am. Trust Fund Litig.* as "explaining that a multiplier of 2.09 is at the lower end of the range of multiplier awarded by courts within the Second Circuit.") (Furman, J.) (internal quotation marks omitted); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (awarding fees of 33% of the $11.5 million

settlement fund, and noting that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).

### a.  *Goldberger* **factors**

In determining whether a fee is reasonable, courts consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

### 1.  **Counsel's time and labor**

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement.  Here, Class Counsel conducted an extensive investigation of this case prior to reaching a settlement.  The time invested in obtaining discovery, meeting with the Class Representatives and calling them, and engaging in settlement discussions, including attending two settlement conferences, was a reasonable expenditure of Class Counsel's time.  *See, e.g.*, *Maley*, 186 F. Supp. 2d at 371-372 (finding that investigation into the case, briefing of court documents, court appearances, and participation in settlement negotiation amounted to a reasonable expenditure of time).

The parties engaged in meaningful formal discovery, which Class Counsel used to evaluate the claims and calculate damages, serving and responding to discovery, meeting and conferring with opposing counsel, and further filing a letter seeking a pre-motion conference for a motion to compel certain documents and information.  (Dusenbery Decl. ¶ 39.)  Class Counsel further spent significant time finalizing the settlement and coordinating the administration of the settlement.  (Dusenbery Decl.  ¶ 39.)  Moreover, through regular contact with the Service Award

Plaintiffs, Class Counsel kept them informed of and involved in the action.  *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class").

Class Counsel invested over $118,496.25 worth of time – including over 304.17 attorney hours and 50.4 paralegal hours – in obtaining a fair settlement for the Class.  (Dusenbery Decl. ¶ 36, Ex. 5.)  In addition to reimbursement of costs, Class Counsel now seeks $599,566.35, or a lodestar multiplier of 5.06.  "[A]pplying only the lodestar method would penalize Class Counsel for reaching early settlement and achieving a quick and manifestly favorable result."  *Asare v. Change Grp. N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *52 (S.D.N.Y. Nov. 15, 2013) (citing cases where courts awarded multipliers of up to five or six times counsel's lodestar.)  When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney."  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007).  Consistent with other courts in the Second Circuit, in wage and hour cases, this Court has approved fees on a percentage basis that amount to up to a 7.6 lodestar multiplier.  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *29; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002 (listing nationwide class action settlement where multiplier ranged up to 8.5 times); *Bekker v. Neuberger Berman Group 401k Plan Inv. Comm.*, No. 16 CV 6123, 2020 U.S. Dist. LEXIS 224680, at *8-9 (S.D.N.Y. Dec. 1, 2020) (approving 5.85 multiplier); *Pantelyat v. Bank of Am., N.A.*, No. 16 CV 8964, 2019 U.S. Dist. LEXIS 15714, at *29 (S.D.N.Y. Jan. 31, 2019) (approving 4.89 multiplier and noting that courts approve multipliers of up to 8 times the lodestar); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635, at *22 (S.D.N.Y. Sept. 23, 2014) (awarding fees amounting to

5.1 times the lodestar); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (approving 6.3 lodestar multiplier); *cf*. *Riveras v. Bilboa Rest. Corp.*, No. 17 CV 4430, 2018 U.S. Dist. LEXIS 211166, at *4-5 (S.D.N.Y. Dec. 14, 2018) (in FLSA collective action, approving fee amounting to 6.7 lodestar multiplier).   As recently as May 2021, Judge Gardephe approved a multiplier of 6.17 in a wage and hour case.   *See Braunstein v. Hudson Hall, LLC,* 19-cv-7983, Dkt. No. 35, p. 20, Dkt. No. 39 (S.D.N.Y. 2021); Dusenbery Decl., Ex. 3.

The 5.06 multiplier that Class Counsel seeks is within the range approved by both this Court and other courts in this Circuit.   "Courts also recognize that efficiency should not be penalized where . . . it has produced a fair result."   *Pinguil v. We Are All Frank, Inc.*, No. 17-CV-2237 (BCM), 2018 U.S. Dist. LEXIS 88339, 2018 WL 2538218, at *5 n.4 (S.D.N.Y. May 21, 2018) (*citing McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 418 (2d. Cir. 2010) (finding that "the percentage method . . . avoids the lodestar method's potential to 'create a disincentive to early settlement'")); *see also Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 CV 520, 2012 U.S. Dist. LEXIS 25060, at *10 (S.D.N.Y. Feb. 24, 2012) (approving 6.8 multiplier where "Class Counsel were able to use their considerable expertise in the type of claims asserted in this action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation.").   Indeed, Class Counsel were able to use their expertise in wage and hour litigation (*see* Dusenbery Decl. *generally*) to quickly distill the key issues in the case and litigate aggressively until filing a pre-motion letter to compel discovery. Class Counsel pressured Defendants through formal discovery to the point where they had to engage in serious negotiations with Class Counsel that ultimately resolved the case.   Efficient, strong results such as this favor approving the requested fee.   Moreover, there is likely more work to do since Class Counsel will likely spend time "implementing and monitoring the settlement," or perhaps

enforcing the settlement, if Defendants fail to make the second payment, reducing Class Counsel's multiplier. *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *23. (internal quotation marks omitted).

### 2.     The litigation's magnitude and complexity and the risks of litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30 (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees."). Class Counsel took this case pursuant to retainer agreements with the named Plaintiffs that provided that Counsel would receive a percentage of the recovery *only if* Plaintiffs obtained a recovery. As discussed *supra*, this was a complex litigation, and Plaintiffs faced significant risks in establishing liability and damages. It is possible that Plaintiffs would not recover anything if Defendant Desai is not found individually liable or they fail to establish their hours worked. Thus, Class Counsel risked receiving little or no payment for their work.

### 3.     Quality of the representation

Class Counsel have extensive experience representing employees – including restaurant employees – in wage-hour class and collective actions, as outlined in the Dusenbery Declaration *generally. See, e.g., Barouille v. Goldman Sachs & Co.*, 10-CV-4285, (S.D.N.Y); *Landin v. UBS*, 10-CV-711, (S.D.N.Y); *Martinez v. Forest Laboratories*, 10-CV-06032, (S.D.N.Y); *Orgill v. Ingersoll-Rand Company*, 101142/2010, (S.D.N.Y); *Butt v. Megabus Northeast, LLC*, 11-CV-3993, (S.D.N.Y); *Gomez v. Gravitas Technology, Inc.*, 10-CV-6412, (S.D.N.Y); *Fouathia v. Gurwitch Products*, 10-CV-6411, (S.D.N.Y); *McKenzie v. Schulte Roth & Zabel, LLP*, 11-CV-

3991, (S.D.N.Y); *Dorn v. Eddington Security*, 08-CV-10271, (S.D.N.Y), (co-counsel with Outten & Golden LLP); and *Lebron v. Apple-Metro, Inc.*, 12-CV-1411, (S.D.N.Y).   Class Counsel used their experience to obtain an excellent result for the class.  *See In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at \*15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class.").   Indeed, securing a $1.8 million dollar settlement against a defunct restaurant in the middle of a pandemic is a wonderful result, in Class Counsel's view.   No Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court."  *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work."   *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted).   Defendants were represented in this action by Raymond Nardo, a litigator with over 30 years of employment law  experience who is well-versed in wage and hour litigation and has served as a mediator in class and collective wage and hour cases.   *See* raynardo.com/about-mr-nardo.html and raynardo.com/restaurant_wage_claims.html.

### 4.       The fee is reasonable in relation to the settlement

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit[,]" particularly in wage and hour class settlements.  *Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at \*15 (S.D.N.Y. Mar. 24, 2008) (wage and hour settlement); *see also*, *e.g.*, *Bannerman*, 2020 U.S. Dist. LEXIS 12868, at \*3-4; *Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043, 2015 U.S. Dist. LEXIS 126934, at \*44 (S.D.N.Y. Sept. 22, 2015) (awarding fees of 32.9% of $15,000,000 settlement fund in wage and hour action); *DeLeon v.*

*Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *12-13 (S.D.N.Y. May 11, 2015) (awarding fees of one-third of $1.85 million settlement in wage and hour action); *Sukhnandan v. Royal Health Care of Long Island*, No. 12 CV 4216, 2014 U.S. Dist. LEXIS 105596, at *43 (S.D.N.Y. July 31, 2014) (awarding fees of 33.3% of $1,949,000 settlement of wage and hour action); *Davis*, 827 F. Supp. 2d 172 (awarding fees of 1/3 of $42,000,000 wage and hour settlement); *Khait*, 2010 U.S. Dist. LEXIS 4067 (awarding fees of 33% of $9,250,000 wage and hour settlement); *Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817, 2009 U.S. Dist. LEXIS 94544, at *13-14 (S.D.N.Y. Oct. 8, 2009) (awarding fees of 30% of $38,000,000 settlement fund in wage and hour case); *see also Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026 , at *24 (S.D.N.Y. Oct. 28, 2011) (noting that "[i]n class settlement funds like this one, a one-third award of the settlement proceeds is considered typical and reasonable").

In this case, Class Counsel seek a $599,566.35 fee, representing one-third of the settlement fund after deducting costs. While this percentage could constitute a "windfall" in cases involving larger settlement funds, the requested fee of $599,566.35 "does not create such an issue." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15,175,000 settlement). Therefore, this factor weighs strongly in favor of approving the requested fee.

### 5. Public policy considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a); N.Y. Lab. Law § 650. A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks*, 2005 U.S. Dist. LEXIS 24890, at *26. Moreover, given the relatively small recoveries of individual Class Members, it is unlikely

that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations." *Frank*, 228 F.R.D. at 181. Indeed, "[w]here relatively small claims can only be prosecuted through aggregate litigation, and law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts." *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *25-26. In light of the foregoing, Class Counsel's requested attorneys' fees are reasonable under the *Goldberger* factors and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, the Class Representatives respectfully ask the Court to (1) grant final approval of the Settlement Agreement; (2) award Class Counsel attorneys' fees and costs; (3) award the requested service awards; and (4) award the Claims Administrator its reasonable fees towards administering the settlement.

Dated: New York, New York
   June 11, 2021

        By:  */s/ Finn Dusenbery*
           Robert Ottinger
           Finn Dusenbery
           THE OTTINGER FIRM, P.C.
           79 Madison Ave
           New York, NY 10016

           *Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*